**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 26-CV-22361-ELFENBEIN

**STACY ALLEN TAYLOR**, *et al.*,

Plaintiffs,

v.

**CORRINE KEEL**, *et al.*,

Defendants.
________________________________/

**REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on a *sua sponte* review of the record. For the reasons explained below, the undersigned respectfully **RECOMMENDS** that this action be **DISMISSED WITHOUT PREJUDICE** for failure to prosecute, for failure to comply with the Court's Order to Show Cause, ECF No. [9], for failure to state a claim, and for lack of Article III standing.

## I. BACKGROUND

### a. The Complaint

On April 6, 2026, Plaintiff Stacy Allen Taylor ("Plaintiff"), proceeding *pro se*, initiated this action by filing a handwritten Complaint against Defendants Corrine Keel, Brad Mickelson, and Bruce Fagan ("Defendants"). *See* ECF No. [1]. Plaintiff identifies Keel as an Assistant United

[1] Pursuant to Administrative Order 2025-11, the undersigned United States Magistrate Judge was assigned as the presiding judge for all purposes, including entering dispositive orders, presiding over any trial, and entering a final judgment. To ensure that all parties understood their rights to opt out of Magistrate Judge jurisdiction without any adverse consequences, the undersigned issued an Order Explaining Magistrate Judge Jurisdiction and Providing Instructions to *Pro Se* Litigant on April 8, 2026. *See* ECF No. [4]. Defendants have not yet entered an appearance in this case, so Defendants cannot be deemed to have consented to Magistrate Judge jurisdiction by failing to opt out. Accordingly, the undersigned will request that this case be transferred to a District Judge for further proceedings and will deal with Plaintiff's failure to comply with a court order, failure to prosecute, failure to state a claim, and lack of Article III standing in a Report and Recommendation instead of in an Order.

States Attorney in the Western District of Kentucky, Mickelson as an Internal Revenue Service agent, and Fagan as a private individual with whom Plaintiff allegedly entered into a contractual arrangement. *See id.* at 1–2. Plaintiff also purports to bring the action on behalf of "Legacy Benefit Holdings Limited," which he describes as a "PFT Trust Company," and "on the behalf of the State of Florida." *Id.* at 1.

The Complaint alleges that, in 2014, Plaintiff entered into a contract with Fagan concerning 105 "Zim Bearer Notes" allegedly worth a total of $21 billion. *See id.* Plaintiff alleges that 98 percent of the proceeds from those financial instruments were intended to fund the construction of self-sufficient homes for disabled veterans, homeless mothers, veterans, and disabled individuals in Florida, Texas, Kentucky, Tennessee, and Ohio. *See id.* Plaintiff further alleges that the remaining two percent was intended to construct self-sufficient greenhouses that would create jobs and provide food. *See id.* According to Plaintiff, the proposed project contemplated approximately $4 billion in funding for each participating state, the construction of approximately 25,000 homes per state, and mortgage payments of approximately $269 per month. *See id.*

Plaintiff alleges that, sometime after Fagan took possession of the assets pursuant to the parties' alleged agreement, Fagan entered into transactions involving a private placement platform and allegedly stolen or laundered money. *See id.* at 1–2. Plaintiff claims that Fagan was supposed to use the resulting funds to pay for the assets he had received from Legacy Benefit Holdings Limited. *See id.* at 2. Plaintiff alleges that Fagan received at least two payments, but the second payment was held after Fagan's bank account was closed because of allegedly illegal funds. *See id.* Plaintiff further alleges that he notified federal law-enforcement agencies approximately 42 times regarding Fagan's allegedly unlawful activities. *See id.*

The Complaint additionally alleges that Fagan entered into a transaction involving

approximately $2 million in laundered funds and that Plaintiff demanded either the return of the 105 bearer notes or payment of the allegedly agreed-upon $21 billion. *See id.* Plaintiff further claims that Fagan paid approximately $25 million to Defendant Mickelson and another unnamed individual to initiate a fraudulent prosecution against Plaintiff and cause his arrest. *See id.* Plaintiff alleges that Defendant Keel ignored the harm allegedly caused to Plaintiff, the State of Florida, and the contemplated beneficiaries of the proposed housing project. *See id.*

Although the Complaint broadly refers to a contract, theft, fraud, money laundering, conspiracy, arrest, and the loss of assets, it does not organize those allegations into separate claims for relief. *See generally id.* It does not identify the legal elements of any claim, specify which claim is asserted against which Defendant, or identify any federal constitutional or statutory provision authorizing relief. *See generally id.* Nor does it clearly distinguish between injuries allegedly suffered by Plaintiff personally, injuries allegedly suffered by Legacy Benefit Holdings Limited, injuries allegedly suffered by the State of Florida, and injuries allegedly suffered by the intended beneficiaries of Plaintiff's proposed charitable or housing projects. *See generally id.*

The Complaint's request for relief likewise centers substantially on non-parties. Plaintiff represents that 98 percent of the funds recovered through this action would be distributed among Florida, Kentucky, Ohio, Texas, and Tennessee to construct housing for disabled veterans, homeless individuals, single mothers, and disabled persons. *See id.* at 1–3. Plaintiff therefore presents the litigation not merely as an effort to obtain compensation for a personal injury, but as an action to recover and distribute assets for the benefit of a trust company, several states, and broad categories of third-party beneficiaries. *See id.*

**b. Procedural History**

Plaintiff did not pay the required $405 filing fee when he commenced this action. *See* ECF Nos. [1], [3]. On April 6, 2026, the Clerk issued a Notice of Filing Deficiency advising Plaintiff that summonses would not be issued unless he paid the filing fee or obtained an order granting him leave to proceed in forma pauperis ("IFP"). *See* ECF No. [3]. On April 28, 2026, after Plaintiff had neither paid the filing fee nor moved to proceed IFP, the Court ordered Plaintiff to do one of those things no later than May 19, 2026. *See* ECF No. [5]. On May 5, 2026, Plaintiff filed a document styled as a "Motion to Remain in the Southern District of Florida." ECF No. [7]. In that Motion, Plaintiff again asserted that 98 percent of the requested recovery would be used to construct self-sufficient homes in Florida, while the remaining two percent would be used to construct greenhouses and create food and employment for a self-sufficient community. *See id.* at 1. Plaintiff argued that he faced prejudice in the Western District of Kentucky and asked that this action remain in the Southern District of Florida so that Plaintiff and the State of Florida could receive a fair trial. *See id.* Plaintiff also included a separate request to be referred to a volunteer-attorney program, asserting that he was incarcerated, indigent, in poor health, had been held in solitary confinement, and lacked internet access. *See id.* at 2.

On May 22, 2026, Plaintiff filed his Motion for Leave to Proceed *In Forma Pauperis* (the "IFP Motion"). *See* ECF No. [8]. Plaintiff reiterated that the purpose of the action was to recover assets or funds allegedly due under his agreement and then donate those assets or funds to the State of Florida to construct self-sufficient housing for homeless veterans, other veterans, single mothers, and disabled persons. *See id.* at 1. Plaintiff again alleged that Defendants conspired to commit theft and breach the alleged contract and stated that 98 percent of the funds would be

divided among Florida, Kentucky, Ohio, Texas, and Tennessee. *See id.* Plaintiff further represented that he had no assets in his personal name, although he was a beneficiary of a trust, and that he could not access the trust assets because of his and his family members' circumstances. *See id.* at 2. Plaintiff also stated that he believed the State of Florida would assist in the litigation if it knew of Defendants' alleged conduct but claimed that he had no means of contacting the Florida Attorney General. *See id.*

Upon reviewing the Complaint, the Court identified substantial questions concerning Plaintiff's standing to pursue this action. *See* ECF No. [9]. On June 3, 2026, the Court entered an Order to Show Cause explaining the constitutional requirements for Article III standing and the restrictions on a *pro se* litigant's ability to represent other persons or entities. *See id.* at 1–4. The Court explained that a plaintiff must allege a concrete and particularized injury personal to himself, fairly traceable to a defendant's conduct, and likely to be redressed through a favorable judicial decision. *See id.* at 1. The Court also explained that 28 U.S.C. § 1654 permits an individual to represent his own interests but does not authorize a non-attorney to represent the legal interests of others. *See id.* at 2–3.

Applying those principles to Plaintiff's filings, the Court observed that Plaintiff purported to act on behalf of the State of Florida and Legacy Benefit Holdings Limited and repeatedly stated that nearly all the requested recovery was intended for states and third-party beneficiaries. *See id.* at 3. The Court further noted that the Complaint framed many of the alleged injuries as injuries to the State of Florida, Legacy Benefit Holdings Limited, and the contemplated beneficiaries of Plaintiff's proposed projects, rather than as a concrete and particularized injury personal to Plaintiff. *See id.* The Court was, therefore, unable to determine from the Complaint whether Plaintiff possessed standing to assert the claims presented. *See id.* Because Plaintiff was

proceeding *pro se*, the Court afforded him an opportunity to clarify and, if possible, cure those deficiencies. *See id.* at 3–4. The Court ordered Plaintiff to show cause, no later than June 23, 2026, why this action should not be dismissed for lack of standing. *See id.* at 4. Specifically, Plaintiff was required to:

1. identify each claim he sought to assert;
2. explain the concrete and particularized injury he personally suffered from each Defendant's alleged conduct;
3. explain how that injury was distinct from any injury suffered by a third party; and
4. provide legal authority supporting his contention that he had standing to pursue the claims asserted.

*See id.* at 4.

Alternatively, Plaintiff was permitted to file an Amended Complaint by June 23, 2026. *See id.* Any amended pleading was required to identify the proper plaintiff, allege only claims that Plaintiff was legally authorized to pursue, and clearly explain the basis for Plaintiff's standing to seek relief in federal court. *See id.* The Court expressly warned Plaintiff that he could not proceed *pro se* on behalf of another person or entity and that failure to establish standing could result in dismissal without prejudice and without further warning. *See id.* at 4–5. The June 23, 2026 deadline has long since expired. Plaintiff did not respond to the Order to Show Cause, file an Amended Complaint, or request an extension of time to do either. The original Complaint therefore remains the operative pleading, and the deficiencies identified in the Court's Order to Show Cause remain uncorrected.

## II. LEGAL STANDARDS

### A. The Court's Inherent Authority

Federal courts possess the inherent authority to manage their dockets and ensure the prompt disposition of cases. *See Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009). Included within that authority is the power to dismiss an action when a litigant fails to comply with court orders. *See Foudy v. Indian River Cnty. Sheriff's Off.*, 845 F.3d 1117, 1126 (11th Cir. 2017) ("Federal courts possess an inherent power to dismiss a complaint for failure to comply with a court order."); *see also Degen v. United States*, 517 U.S. 820, 827 (1996) (recognizing a federal court's authority to enforce its orders through dismissal in appropriate circumstances); Fed. R. Civ. P. 41(b).

The Eleventh Circuit has repeatedly recognized that dismissal is appropriate where a litigant disregards court orders and abandons prosecution of the action. *See Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337 (11th Cir. 2005); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion."). Those principles apply with equal force to *pro se* litigants. Although courts construe *pro se* filings liberally, *pro se* parties remain obligated to comply with court orders and the Federal Rules of Civil Procedure. *See Moon*, 863 F.2d at 837. A court cannot be expected to indefinitely delay proceedings when a litigant fails to comply with directives necessary to move the case forward.

### B. Motion to Proceed IFP

In most situations, a plaintiff who initiates a civil action in this District must pay a filing fee of $405. *See* 28 U.S.C. § 1914(a); *Flannery v. USAA Gen. Indem. Co.*, No. 24-CV-14390, 2024 WL 5485793, at *1 (S.D. Fla. Dec. 23, 2024); *Court Fees*, U.S. Dist. Ct. for S.D.

Fla., https://www.flsd.uscourts.gov/court-fees (last visited August 3, 2026). A plaintiff can avoid paying the filing fee by including along with the complaint a motion to proceed IFP. *See, e.g.*, 28 U.S.C. § 1915; *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 (11th Cir. 2004). A plaintiff moving to proceed IFP must submit "an affidavit that includes a statement of all assets" the plaintiff possesses, a statement "that the person is unable to pay" the filing fees, "the nature of the action," and the "affiant's belief that" he or she "is entitled to redress." 28 U.S.C. § 1915(a)(1).

If the affidavit is facially sufficient, the court should "docket the case and then proceed to the question of whether the asserted claim is frivolous." *Martinez*, 364 F.3d at 1307 (alteration adopted, quotation marks omitted); *see also* 28 U.S.C. § 1915(e)(2)(B)(i) (instructing that a court must dismiss the case if the court "at any time" determines that the action "is frivolous or malicious"). A claim is frivolous if it "realistically has no better than a slight chance of success" or "lacks an arguable basis" in law or in fact, including, for example, by asserting fantastic facts. *Clark v. State of Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 640 n.1 (11th Cir. 1990). Section 1915(e) also requires the court to dismiss a complaint that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Finally, § 1915(e) requires the court to dismiss a complaint that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(iii).

And, of course, "[*p*]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). And while "*pro se* pleadings are liberally construed and federal courts should look beyond the label of the pleadings to determine whether they are properly characterized, a court may not serve as de facto counsel for a party or rewrite a pleading." *United States v. Cordero*, 7 F.4th 1058, 1068 (11th Cir. 2021) (citations and quotation marks omitted).

**C. Pleading Requirements**

As discussed above, § 1915(e)(2) requires the Court to dismiss Plaintiff's case if it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Failure to state a claim includes failure to comply with the Federal Rules of Civil Procedure. *See Moon*, 863 F.2d at 837. That means Plaintiff's Complaint must conform with Rule 8, which requires him to give a short and plain statement of his claims showing he is entitled to relief, *see* Fed. R. Civ. P. 8(a), and with Rule 10, which requires him to state those claims in a series of numbered paragraphs and to limit each paragraph to a single set of circumstances, *see* Fed. R. Civ. P. 10(b).

To state a claim for relief, a pleading "must contain" three substantive parts: (1) "a short and plain statement of the grounds for the court's jurisdiction," (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). Those substantive requirements are aimed at ensuring that a complaint contains "sufficient factual matter, accepted as true," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), to both "state a claim to relief that is plausible on its face" and "give the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (alteration adopted, quotation marks omitted).

"[D]istrict courts have the power and the duty to define the issues at the earliest stages of litigation," which includes the responsibility of dismissing or requiring a party to correct shotgun pleadings. *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998). There are four types of shotgun pleadings that violate Rule 8(a), Rule 10(b), or both:

> The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing

> each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (footnote call numbers omitted).

The "unifying characteristic" of shotgun pleadings is that they "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323 (footnote call number omitted). The Eleventh Circuit has "condemned shotgun pleadings time and again" because they "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356–57 (11th Cir. 2018) (citation omitted); *see also Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

Given the havoc they wreak, the Eleventh Circuit has specifically instructed district courts not to tolerate shotgun pleadings because "[t]olerating such behavior constitutes toleration of obstruction of justice." *Jackson*, 898 F.3d at 1357 (footnote omitted); *see also Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997) ("[S]hotgun complaints . . . are altogether unacceptable."). It has made clear that a district court that receives a shotgun

pleading, at a minimum, "must intervene *sua sponte* and order a repleader." *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). And if the claims of a complaint "are so poorly pleaded that" it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," *Weiland*, 792 F.3d at 1325 (emphasis and quotation marks omitted), a district court "retains authority to dismiss a shotgun pleading on that basis alone," *Jackson*, 898 F.3d at 1357.

**D. Standing**

Article III of the United States Constitution limits the jurisdiction of federal courts to actual "Cases" and "Controversies." U.S. Const. art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case — in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quotation marks omitted). "For a party to have standing to bring a lawsuit, it must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (en banc) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "In plainer language, the plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it." *Id.*

To satisfy the injury-in-fact requirement, the alleged injury must be both concrete and particularized and actual or imminent rather than conjectural or hypothetical. *See Spokeo*, 578 U.S. at 339. For an injury to be particularized, it "must affect the plaintiff in a personal and individual way." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). A plaintiff therefore generally may not rest his claim for relief on the legal rights or interests of

third parties. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975). Nor may a court grant relief for an individual or entity that is not properly before it. *See Nagarajan v. Petrie Constr. LLC*, No. 24-CV-61359, 2024 WL 4003706, at *1 (S.D. Fla. Aug. 2, 2024) (explaining that a court is "without authority" to grant relief for a non-party); *see also Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302 (2d Cir. 1999) ("Subject to exceptions, a court's in personam order can bind only persons who have placed themselves or been brought within the court's power."); *United States v. Paccione*, 964 F.2d 1269, 1275 (2d Cir. 1992) ("[A] court generally may not issue an order against a nonparty."). A dismissal for lack of standing must be without prejudice. *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991))).

Relatedly, 28 U.S.C. § 1654 provides that, "[i]n all courts of the United States[,] the parties may plead and conduct their own cases personally or by counsel, as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." *Timson v. Sampson*, 518 F.3d 870, 873 (11th Cir. 2008) (quoting 28 U.S.C. § 1654). Section 1654 protects an individual's right to represent himself, but it does not authorize a non-attorney to represent another person's or entity's legal interests. *See id.*; *see also Conner v. Penn. Nat'l Mut. Cas.*, No. 07-CV-14301, 2008 WL 2944662, at *1 (S.D. Fla. July 31, 2008); *Charest v. Williams*, No. 07-CV-984-MHT, 2008 WL 686621, at *1 (M.D. Ala. Mar. 7, 2008) (explaining that a *pro se* litigant may not litigate the claims of others because "the competence of a layman is clearly too limited to allow him to risk the rights of others") (quotation marks and citation

omitted).

Although "the right to proceed *pro se* under 28 U.S.C. § 1654[] is a fundamental statutory right that is afforded the highest degree of protection," that right belongs only to the person appearing *pro se*. *Conner*, 2008 WL 2944662, at *1 (citation omitted). Accordingly, "a plaintiff may not proceed *pro se* if the suit is actually brought on behalf of a real party in interest" other than himself. *Id.* Following that same rationale, a separate juridical entity, including a corporation, trust, or other artificial entity, ordinarily must appear through licensed counsel. *See Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985).

## III. DISCUSSION

### A. Plaintiff Failed to Prosecute This Action and Comply with the Court's Order to Show Cause

The Complaint is first subject to dismissal because Plaintiff failed to prosecute this action and failed to comply with the Court's June 3, 2026 Order to Show Cause. *See* ECF No. [9]. As a recap, the Court did not dismiss the case immediately upon identifying the standing and representational deficiencies in Plaintiff's filings. Instead, consistent with the liberal treatment afforded to *pro se* pleadings, the Court provided Plaintiff a meaningful opportunity to clarify his claims and establish his standing and the Court's jurisdiction. *See id.* at 3–4; *see also Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998); cf. *Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1292 (11th Cir. 2018). The Court's instructions were both detailed and tailored to the particular deficiencies apparent from Plaintiff's filings. Plaintiff was directed to identify each claim, explain the concrete and particularized injury he personally suffered because of each Defendant's conduct, distinguish his alleged injury from injuries allegedly suffered by third parties, and identify legal authority supporting his standing. *See* ECF No. [9] at 4. Alternatively, Plaintiff was permitted to file an Amended Complaint identifying the proper plaintiff, limiting the

pleading to claims Plaintiff was legally authorized to pursue, and clearly explaining the basis for standing. *See id.*

The Order was clear and unambiguous. It established a specific deadline of June 23, 2026 and expressly warned Plaintiff that failure to establish standing could result in dismissal without prejudice and without further warning. *See id.* at 4–5. The warning was particularly significant because the Court had previously warned Plaintiff, in connection with the filing-fee requirement, that noncompliance with a Court order could result in dismissal. *See* ECF No. [5]. Thus, Plaintiff had notice both of what he was required to do and of the consequence of failing to do it. Nevertheless, Plaintiff did not respond. He did not attempt to explain his personal injury, identify the legal claims being asserted, distinguish his interests from those of Legacy Benefit Holdings Limited or the State of Florida, provide authority supporting his standing, or file an Amended Complaint. He also did not request additional time or inform the Court of any impediment preventing compliance.

The Court cannot litigate Plaintiff's case for him or hold the case open indefinitely while waiting for him to take the steps necessary to establish jurisdiction and advance the litigation. Although Plaintiff is *pro se*, he remains subject to Court orders and the Federal Rules of Civil Procedure. *See Moon*, 863 F.2d at 837. His complete failure to respond to an order directed at a threshold jurisdictional issue constitutes both a failure to prosecute and a failure to comply with a lawful Court order. Under these circumstances, dismissal without prejudice is appropriate. *See Degen*, 517 U.S. at 827; *Foudy*, 845 F.3d at 1126; *Moon*, 863 F.2d at 837. Plaintiff received a meaningful opportunity to correct the deficiencies, explicit instructions concerning the required response, a definite deadline, and advance warning that dismissal could follow. His failure to take any action after receiving that warning demonstrates abandonment of the case sufficient to warrant

dismissal.[2]

**B. The Complaint Fails to State a Claim**

The Complaint is also subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff seeks leave to proceed without paying the filing fee. *See* ECF No. [8]. That request requires the Court to examine the sufficiency of the proposed action and dismiss it if it fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2).

Even when construed liberally, the Complaint does not satisfy Rules 8 and 10. *First*, it fails to provide a short and plain statement of the grounds for federal jurisdiction. *See* Fed. R. Civ. P. 8(a)(1). The Complaint concerns an alleged contract, alleged theft or conversion of financial instruments, alleged fraudulent transactions, and an alleged conspiracy involving a private individual and federal officials. *See generally* ECF No. [1]. But it does not identify any provision of the Constitution, any federal statute, or any other jurisdictional grant that authorizes a federal court to decide those claims. *See generally id.*

For federal question jurisdiction, a complaint must identify a federal cause of action or allege facts demonstrating that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law. *See* 28 U.S.C. § 1331; *Gunn v. Minton*, 568 U.S. 251, 257–58 (2013). Plaintiff does neither. The Complaint does not identify a constitutional right that Keel or Mickelson allegedly violated, a federal statute authorizing a private right of action against them, or a recognized waiver of sovereign immunity. *See generally* ECF No. [1].

---

[2] Dismissal without prejudice, rather than with prejudice, is the proper sanction. The Court has not adjudicated the merits of any properly pleaded claim, and the current record does not contain the findings of willful or contumacious conduct ordinarily required for the more severe sanction of dismissal with prejudice. *See Betty K Agencies*, 432 F.3d at 1337–39. A dismissal without prejudice adequately vindicates the Court's authority, clears an inactive case from the docket, and leaves Plaintiff free to pursue any claim he is legally entitled to assert through a properly pleaded action, subject to any applicable defenses or limitations periods.

Nor does the Complaint adequately invoke diversity jurisdiction. It does not allege the citizenship of any party, much less the citizenship of every plaintiff and every defendant. *See generally id.*; *see also* 28 U.S.C. § 1332(a). Plaintiff's incarceration in Kentucky, his identification of Keel as an Assistant United States Attorney in Kentucky, and his descriptions of Legacy Benefit Holdings Limited and the State of Florida do not supply the complete citizenship allegations necessary to establish diversity jurisdiction. In fact, the limited citizenship allegations Plaintiff does include in the Complaint defeat diversity of citizenship. The Complaint therefore does not satisfy Rule 8(a)(1).

*Second*, the Complaint fails to provide a short and plain statement showing that Plaintiff is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). It contains a continuous narrative that blends several distinct legal theories — including breach of contract, theft, fraud, money laundering, conspiracy, wrongful arrest, and official misconduct — without identifying which causes of action Plaintiff intends to pursue. *See generally* ECF No. [1]. It does not separate those theories into individual counts, identify the elements of any claim, or connect each claim to specific supporting facts.

The allegations against the three Defendants are also not sufficiently differentiated. Fagan is alleged to have entered into a contract, taken possession of financial instruments, engaged in transactions involving allegedly laundered funds, and failed to return or pay for the assets. *See id.* at 1–2. Mickelson is alleged to have accepted money from Fagan and participated in initiating a fraudulent prosecution against Plaintiff. *See id.* at 2. Keel is alleged to have ignored Plaintiff's allegations and the harm purportedly suffered by Plaintiff and others. *See id.* But the Complaint does not identify the legal claim asserted against each Defendant or explain how the alleged facts satisfy the elements of any particular cause of action.

The Complaint therefore displays at least two recognized forms of shotgun pleading. It

fails to separate each cause of action into a distinct count, and it asserts multiple legal theories against multiple Defendants without clearly specifying which Defendant is liable under which theory. *See Weiland*, 792 F.3d at 1322–23. It is also replete with conclusory assertions — such as conspiracy, theft, fraud, and money laundering — without sufficient factual allegations connecting those labels to a legally cognizable claim. *See id.*

The allegations sounding in fraud are especially deficient. Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). That ordinarily requires identification of the allegedly false statements or acts, the time and place of the misconduct, the person responsible, how the statements or conduct were misleading, and what the defendant obtained as a result. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). Plaintiff's generalized allegations of a "fraudulent case," conspiracy, stolen money, and illegal transactions do not satisfy that standard.

*Third*, the Complaint does not clearly state a legally cognizable demand for relief as required by Rule 8(a)(3). Plaintiff appears to seek recovery of the alleged bearer notes or their asserted $21 billion value, but he repeatedly states that nearly all of the recovery would be distributed to states and third-party beneficiaries. *See* ECF No. [1] at 1–3. The Complaint does not clearly state what relief Plaintiff personally seeks from each Defendant, whether he seeks legal or equitable relief, or the legal basis upon which the Court could direct that funds be distributed to non-party governmental entities and beneficiaries.

The Complaint also fails to comply with Rule 10(b). It does not use numbered paragraphs, limit each paragraph to a single set of circumstances, or separate different transactions and claims in a manner that would permit Defendants to respond intelligibly. *See* Fed. R. Civ. P. 10(b). Its handwritten narrative combines the alleged contract, the financial transactions, Plaintiff's arrest,

the proposed charitable projects, and injuries allegedly sustained by multiple persons and entities into a single undifferentiated pleading. These deficiencies are not merely technical. They prevent the Court and Defendants from identifying the causes of action at issue, the jurisdictional basis for those claims, the particular Defendant responsible for each alleged violation, and the relief sought by Plaintiff. A Defendant could not reasonably frame a responsive pleading from the present Complaint without guessing what claims Plaintiff intended to assert and on whose behalf he intended to assert them. That is precisely the harm Rules 8 and 10, and the prohibition against shotgun pleadings, are intended to prevent. *See Weiland*, 792 F.3d at 1323; *Anderson*, 77 F.3d at 366–67.

The Court afforded Plaintiff an opportunity to address these problems. The Order to Show Cause directed him to identify each claim, identify his own concrete injury, distinguish his injury from that of others, and, alternatively, submit an Amended Complaint identifying the proper plaintiff and the claims he was authorized to pursue. *See* ECF No. [9] at 4. Plaintiff did not avail himself of that opportunity. Because the operative Complaint does not comply with Rules 8 and 10, does not identify a basis for federal jurisdiction, does not state a plausible claim against any Defendant, and remains an impermissible shotgun pleading, it fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). And because the Court may not rewrite the Complaint, select legal theories for Plaintiff, or construct jurisdictional allegations he did not plead, dismissal is appropriate. *See Cordero*, 7 F.4th at 1068.

### C. Plaintiff Has Not Established Article III Standing and Cannot Proceed *Pro Se* on Behalf of Other Persons or Entities

The action is independently subject to dismissal because Plaintiff has not established Article III standing. The Complaint does include allegations that might, if properly developed, concern an injury to Plaintiff. For example, Plaintiff alleges that he entered into an agreement

with Fagan, demanded the return of assets or payment, and was later arrested through an allegedly fraudulent prosecution. *See* ECF No. [1] at 1–2. But the pleading does not clearly identify whether Plaintiff entered the alleged agreement in his individual capacity, as a beneficiary of Legacy Benefit Holdings Limited, as a representative of that entity, or purportedly on behalf of the State of Florida and the project's intended beneficiaries. *See id.* at 1. That ambiguity is material. Article III requires Plaintiff to identify a concrete and particularized injury that he personally suffered. *See TransUnion*, 594 U.S. at 423; *Muransky*, 979 F.3d at 924. Plaintiff cannot establish standing merely by alleging that Defendants injured Legacy Benefit Holdings Limited, the State of Florida, veterans, homeless individuals, single mothers, disabled individuals, or residents of several states. Those alleged injuries belong, if at all, to those persons or entities, not automatically to Plaintiff.

The Complaint expressly identifies Legacy Benefit Holdings Limited as a plaintiff and describes himself as its "Beneficiary." ECF No. [1] at 1. Plaintiff cannot represent Legacy Benefit Holdings Limited *pro se*. Section 1654 permits Plaintiff to conduct his own case; it does not authorize him to serve as legal counsel for a separate trust, company, or other juridical entity. *See* 28 U.S.C. § 1654; *Timson*, 518 F.3d at 873; *Palazzo*, 764 F.2d at 1385. Thus, even assuming Legacy Benefit Holdings Limited possesses a claim, Plaintiff cannot prosecute that claim on the entity's behalf unless he is a licensed attorney authorized to represent it. Nothing in the record indicates that he is.

The same problem applies to the State of Florida. The Complaint identifies Plaintiff and Legacy Benefit Holdings Limited as acting "on the behalf of the State of Florida." ECF No. [1] at 1. But Plaintiff is a private individual. In his Complaint, he identifies no appointment, statute, authorization, assignment, or other legal basis permitting him to litigate claims on behalf of the State of Florida. A private *pro se* litigant cannot assume the role of the Florida Attorney General

or otherwise prosecute claims belonging to the State. *See* 28 U.S.C. § 1654; *Timson*, 518 F.3d at 873. Nor can the Court award relief to the State of Florida when the State is not properly before the Court as a party represented by authorized counsel. *See Nagarajan*, 2024 WL 4003706, at *1.

Plaintiff likewise cannot establish standing based on the contemplated use of any recovery for veterans, homeless individuals, single mothers, disabled persons, or residents of Florida and other states. Plaintiff repeatedly emphasizes that 98 percent of any recovery would be used to benefit those groups. *See* ECF Nos. [1], [7], [8]. Even accepting Plaintiff's charitable intentions as true, a desire to use an alleged recovery to assist third parties does not demonstrate that Plaintiff himself suffered a legally cognizable injury. Article III standing turns on whether Defendants invaded Plaintiff's own legally protected interests, not on whether Plaintiff intends to use a potential recovery for socially beneficial purposes. *See Spokeo*, 578 U.S. at 339. The proposed distribution of funds also does not establish redressability. The Complaint does not explain how an order directing Defendants to pay billions of dollars for projects benefiting non-parties would redress a personal injury suffered by Plaintiff. Nor does it identify any enforceable legal interest Plaintiff possesses in the construction of the proposed homes and greenhouses or in the distribution of funds to the identified states and beneficiaries. A generalized interest in seeing a proposed project completed or third parties benefited is insufficient to establish Article III standing. *See Muransky*, 979 F.3d at 924.

The traceability requirement is also inadequately pleaded. The Complaint alleges a broad sequence of misconduct involving Fagan's alleged failure to perform a contract, allegedly unlawful financial transactions, payments to Mickelson, Plaintiff's arrest, and Keel's alleged failure to respond. ECF No. [1]. But it does not clearly identify the specific injury Plaintiff personally attributes to each Defendant. The generalized assertion that all Defendants participated in a

conspiracy does not substitute for facts establishing a causal connection between each Defendant's conduct and a concrete injury to Plaintiff. These were the precise deficiencies identified in the Order to Show Cause. *See* ECF No. [9]. The Court did not require Plaintiff to prove his claims. It required him only to identify the claims, explain his personal injury, distinguish that injury from the injuries of third parties, and provide a legal basis for his standing. *See id.* at 4. Plaintiff did not respond and therefore left the Court without the information necessary to determine whether an actual case or controversy exists.

Because Plaintiff bears the burden of establishing standing and has not done so, the Court cannot proceed with this action. *See Lujan*, 504 U.S. at 561. The appropriate disposition is dismissal without prejudice. *See Stalley*, 524 F.3d at 1232. A jurisdictional dismissal without prejudice does not determine whether Plaintiff, Legacy Benefit Holdings Limited, the State of Florida, or any other person possesses a potentially viable claim. It reflects only that Plaintiff has not established his authority to litigate the claims asserted in this case or this Court's constitutional power to adjudicate them.

## IV. CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that:

1. This action be **DISMISSED WITHOUT PREJUDICE** for failure to prosecute, for failure to comply with the Court's Order to Show Cause, ECF No. [9], for failure to state a claim, and for lack of Article III standing;
2. Plaintiff's Motion to Remain in the Southern District of Florida, **ECF No. [7]**, and Motion for Leave to Proceed In Forma Pauperis, **ECF No. [8]**, be **DENIED AS MOOT**; and
3. The Clerk of Court be directed to **CLOSE** this case.

The Parties will have fourteen (14) days from the date of being served with a copy of this

Report and Recommendation within which to file written objections, if any, with the assigned United States District Judge. Failure to timely file objections shall bar the Parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the Parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on August 5, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record

**Stacy Allen Taylor**
212148
G.C.D.C.
320 Shaw Station Rd.
Leitchfield, KY 42754
*PRO SE*